NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0663n.06

No. 10-3367

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 21, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| ANTONIO WYNN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MOORE, GIBBONS and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** In his original appeal before this panel, defendant-appellant Antonio Wynn challenged his sentence for possession with intent to distribute crack cocaine on the grounds that his prior conviction for sexual battery in violation of Ohio Revised Code § 2907.03 is not a "crime of violence" under *Begay v. United States*, 553 U.S. 137 (2008), and the district court therefore erred in applying the United States Sentencing Guidelines career offender enhancement § 4B.1.1 to his sentence. We remanded for resentencing for the district court to determine whether Wynn qualified as a career offender in light of *Begay*. On remand, the district court applied the career offender enhancement and resentenced Wynn to 235 months of imprisonment with eight years of supervised release. Wynn now appeals from his sentence, arguing that the government failed to establish that his prior sexual battery offense under § 2907.03(A)(1)

-1-

was a "crime of violence," that his prior conviction for assault on a peace officer was not categorically a "crime of violence," and that the district court failed to address his objections to the Pre-Sentence Investigation Report ("PSR"). For the reasons that follow, we affirm Wynn's sentence.

I.

In 2007, Wynn pled guilty to possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). The factual background and procedural history of Wynn's case are thoroughly outlined in our prior decision. *See United States v. Wynn*, 579 F.3d 567, 569–70 (6th Cir. 2009). Wynn was sentenced by the district court to 235 months of imprisonment and eight years of supervised release. In making its sentencing decision, the district court found that Wynn was a career offender for the purposes of U.S.S.G. § 4B1.1. The § 4B1.1 enhancement was based on two prior convictions: (1) assault on a peace officer, in violation of Ohio Revised Code § 2903.13, and (2) sexual battery, in violation of Ohio Revised Code § 2907.03.

Wynn appealed his sentence, arguing that under *Begay v. United States*, 553 U.S. 137 (2008), the district court erred in applying the § 4B1.1 career offender enhancement to his sentence because his guilty plea to sexual battery under § 2907.03 was not a "crime of violence" for the purposes of determining whether he was a career offender. *Wynn*, 579 F.3d at 570. We found that a generic conviction of sexual battery under § 2907.03 was not categorically a "crime of violence" and that the district court could not conclude that Wynn's conviction under § 2907.03 was a "crime of violence" based on the factual recitation of the crime contained in the PSR because a PSR is not a *Shepard* document. *Id.* at 574, 576–77. We vacated Wynn's sentence and remanded to the district court for the purpose of "resentencing Wynn after determining whether Wynn qualifies as a career

offender in light of *Begay*." *Id.* at 577. We instructed the district court to "allow the government to submit further evidence on the issue of career-offender status, so long as such evidence adheres to the *Shepard* standard." *Id.*

On remand, the United States submitted a sentencing brief and a sentencing memorandum accompanied by *Taylor/Shepard* documents to support its argument that the career offender enhancement was properly applied to Wynn. The government submitted the transcript of Wynn's guilty plea colloquy in Ohio state court, which demonstrated that Wynn pled guilty to the coercive sexual battery subsection of § 2907.03, § 2907.03(A)(1), the text of the sexual battery statute as it existed when Wynn pled guilty to § 2907.03(A)(1), and the journal entry for Wynn's guilty plea. The government argued that these documents demonstrated that Wynn pled guilty to coercive sexual battery, in violation of Ohio Revised Code § 2907.03(A)(1), and that this crime was categorically a "crime of violence."

Wynn also filed a sentencing memorandum for the district court to consider before resentencing. Wynn stated that the "sentencing guidelines calculations are straightforward." The memorandum then states:

> Mr. Wynn's advisory guideline calculations as a career offender under U.S.S.G. § 4B1.1 reflect a starting point at offense level 37, which reflects the maximum sentence of life under 21 U.S.C. § 841(b)(1)(B), where an individual has a qualifying prior offense, and has been convicted of possessing with intent to distribute 44.7 grams of cocaine base (crack). Thus, Mr. Wynn's calculations, as reflected in his first sentencing hearing on September 18, 2007, reflect a sentencing range of 262 - 327 months, after three acceptance points are given for his timely admission of guilt.

The bulk of Wynn's sentencing memorandum is devoted to his argument that the sentencing disparity between crack and powder cocaine sentences is unwarranted and that the district court

should apply a 1:1 crack-powder cocaine ratio to his sentencing. Wynn argued that in light of the "distinct climate change as reflected in the adoption of the equal ratio[] for crack versus powder cocaine, . . . excluding those defendants who are identified as career offenders from the benefit of the newly developing jurisprudence, is inequitable." As a result, Wynn argued that the court should grant him a variance in recognition of the Guidelines disparity between crack and cocaine sentences, despite classification as a career offender "because a disproportionately harsh sentence is no less harsh, nor no less disparate, simply because it is in Chapter Four of the Sentencing Guidelines instead of Chapter Two." Wynn requested a sentence "in a range of 120 - 188 months" which he argued "reflects consideration of the crack ratio, translated in a manner which reflects a variance from the career offender guideline . . . ."

On March 3, 2010, the district court resentenced Wynn to 235 months of imprisonment and eight years of supervised release. During the resentencing proceedings, Wynn's attorney stated that she wanted to "bring out a couple of things" about the PSR to the court's attention. Wynn's attorney noted that "while it doesn't make a difference to our proceeding here with respect to his criminal history score, his eventual category, it is making a difference to him in his custody classification with the [Bureau of Prisons]" and asked that the district court look into whether Wynn should receive only one point for his conviction for assault on a peace officer instead of the two points assessed by the PSR. When asked by the district court what this meant, the government offered that it believed that Wynn was seeking to obtain a different Bureau of Prisons ("BOP") classification so that he could potentially be assigned to a facility with lighter security. The government further explained that Wynn's request for a one point reduction was based on the fact that if there was no intervening arrest

between the two offenses set forth in paragraphs 32 and 33 of the PSR (assault on a peace officer and possession of drugs), which were committed on March 9, 2000 and March 13, 2000, respectively, there should be a one point reduction in the score based on the modified Guidelines. After consulting with the probation officer, the district court determined that there was an intervening arrest between the offenses and that the offenses were correctly scored. In response to the court's finding that the conviction was correctly scored, Wynn's attorney said: "Okay. Okay, Your Honor. Thank you. As for any other objections to the presentence report, I don't have it now."

The district court then calculated a total offense level of 33 and a criminal history category of VI, yielding a Guidelines range of 235 to 293 months. When asked if he had anything to say, Wynn asked the district court: "Is it necessary that you have to go with the career offender statu[t]e? Could you sentence me to the mandatory minimum? I mean, it's a lot of time, Judge, and things happened over the years when I was younger, you know, stupid things." The district court found that, taking the § 3353(a) factors into consideration, awarding Wynn a one-level reduction,[1] and imposing the career offender enhancement, the original sentence of 235 months with eight years of supervised release remained appropriate.

## II.

The government argues that Wynn has waived his right to challenge his status as a career offender on appeal before this court because he agreed that he was a career offender before the

_____

[1]The court appears to have awarded Wynn the same one-level reduction it granted him at his original sentencing proceeding based on its finding that Wynn exhibited "forthrightness" and a "willingness to help."

district court. Wynn contends that he has not waived his right because, although he acknowledges a lack of advocacy on the part of counsel in this regard, this lack of argument does not constitute a knowing and voluntary relinquishment of the right. Wynn argues that even though the record lacks strong argument against the career offender adjustment, it also lacks evidence that he affirmatively and voluntarily waived the issue—he contends that his sentencing memorandum did not agree to the career offender adjustment and that he preserved the issue at sentencing when he asked the court if it was "necessary . . . to go with the career offender statu[t]e?"

Waiver of a claim is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted).[2] Effective abandonment or relinquishment of an issue may waive any right of appeal of an issue. *See United States v. Denkins*, 367 F.3d 537, 544 (6th Cir. 2004). This court has found waiver of a challenge to the denial of a motion to withdraw a plea where the defendant submitted a motion to withdraw a no contest plea and a motion for a competency evaluation in a single filing to the district court and then, after a competency evaluation was performed, agreed to withdraw his competency-based objection to the PSR. *Id.* at 543–44. The basis for the defendant's motion to withdraw his plea "was that he lacked the competency to enter this plea." *Id.* at 544. Once the objection to the PSR was withdrawn, the district court was "never called upon to decide whether to permit Defendant to withdraw his plea on the ground of incompetency." *Id.* Despite the fact that the underlying motion to withdraw the

_____

[2]In contrast, forfeiture is the "failure to make the timely assertion of a right." *Olano*, 507 U.S. at 733. Although they stand for different concepts, the terms "waiver" and "forfeiture" are often confused and have been used somewhat imprecisely (and interchangeably) in many cases. *See Freytag v. C.I.R.*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring).

plea was not *explicitly* abandoned, this court found that because the defendant did not pursue the competency issue at sentencing, any challenge to the denial of the motion to withdraw the plea was foreclosed because the issue was abandoned. *Id.* Waiver of a known right occurs when an attorney "agree[s] in open court with a judge's proposed course of conduct" such that the defendant cannot then charge the court with error for pursuing such course. *United States v. Goodman*, 519 F.3d 310, 319 (6th Cir. 2008) (internal quotations omitted).

On remand, Wynn's sentencing memorandum did not explicitly agree with the government's contention that his conviction for violating the Ohio sexual battery statute constitutes a "crime of violence." However, Wynn did not raise any argument challenging the government's contention that his conviction was for a "crime of violence," which he knew was the very issue before the district court on remand. Instead, Wynn's sentencing memorandum focused on discussing the potential application to his case of *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Spears v. United States*, 555 U.S. 261 (2009), both of which addressed the ability of district courts to deviate from the prescribed 100-to-1 ratio for crack cocaine versus powder cocaine sentences. Wynn argued for a variance to take into account the Guidelines disparity and to avoid the inequity of excluding career offenders from the benefit of newly developing jurisprudence. But in arguing that it would not be fair to deny him the benefit of the new discretionary policy regarding crack cocaine sentencing simply because he is a career offender, Wynn has effectively agreed with the proposition that he is a career offender in the first place. Wynn's sentencing memorandum also outlined how the district court could grant him a variance that would still manage to take into account his prior convictions for sexual battery and assault on a peace officer as well as his recidivism, and it acknowledged that

"Mr. Wynn is mindful of the goals of punishment which the career offender guideline seeks to meet." These statements are not qualified by any caveat or objection to the initial premise that Wynn qualifies as a career offender. As a result, the government's contention that Wynn agreed that he is properly classified as a career offender in his sentencing memorandum has merit.[3]

Wynn also failed to argue against his classification as a career offender at his resentencing hearing. During the resentencing proceeding, the district court judge asked the attorneys to help him remember the basis for his original sentencing calculations, and Wynn's attorney interjected to help:

> The Court: What was wrong with me? Antonio, what was wrong with me then?[4] What I have here is, there's a total offense level of 37, Criminal History Category VI. That's a 360-month sentence.
>
> [Probation Officer]: Yes, that was the initial computations in the report.
>
> The Court: So I departed more than –
>
> [Government attorney]: Well, obviously, that was before acceptance, wasn't it?

---

[3]Although the government argues that Wynn agreed to his status as a career offender in the portion of his sentencing memorandum which outlines the district court's original Sentencing Guidelines calculations, we believe that Wynn is correct that section I.B of his memorandum ("Sentencing Guidelines") *alone* does not provide significant support for the government's argument. That section of the memorandum is more fairly construed as Wynn's recitation of the calculations used by the district court and the PSR in the original sentencing proceeding.

[4]This is one of several instances during resentencing when the district court addressed or referred to Wynn informally by his first name. For example, the district court said: "Antonio, how you doing today?"; "Do you understand all this, Antonio?"; "So anything else you want to say, Antonio?"; "You talk to Antonio, he's a pretty good guy, but you know, he was a wild man . . . ." The use of such informal address hardly reflects the dignity and importance of the proceeding and might well be understood as failing to accord the litigant the respect and courtesy he is due. We counsel against the use of such terminology, although we note that such an informal courtroom style is an aberration from that typically employed in the federal courts.

[Wynn's attorney]: That was before acceptance.

The Court: I'm sorry. So it was 235 to 298.

[Wynn's attorney]: Yes, at level 34.

The Court: 33.

[Wynn's attorney]: 33, I'm sorry.

The Court: Gotcha, all right. So we did all this because why?

Although the government argues that the above exchange demonstrates that Wynn's attorney agreed that the career offender Guideline range for a final offense level of 33 and a criminal history category of VI was applicable, we believe that the transcript is more ambiguous. Nonetheless, Wynn's attorney and Wynn failed to raise *any* objection when the district court then proceeded to base Wynn's sentence on the premise that he is a career offender.

Apart from the above exchange, Wynn argues that he preserved the issue by asking the district court: "[i]s it necessary that you have to go with the career offender statu[t]e? Could you sentence me to the mandatory minimum? I mean, it's a lot of time, Judge, and things happened over the years when I was younger, you know, stupid things. I'm more mature now." Yet this statement does not clearly demonstrate that Wynn challenged his classification as a career offender. Instead, it appears that Wynn accepted his status as a career offender and was simply asking the court whether it had the discretion to avoid applying the career offender enhancement in light of his increased maturity. Further, the only objection Wynn's counsel raised at resentencing regarded the scoring of his prior convictions for the purposes of potentially altering his custody classification with the BOP.

Admittedly, unlike many waiver cases, Wynn did not carry out an affirmative act that clearly shows his intentional relinquishment of his claim. *See, e.g.*, *United States v. Obi*, 193 F. App'x 453, 455 (6th Cir. 2006) (withdrawal of motion to withdraw plea found to waive argument that plea was entered due to ineffective assistance of counsel). However, explicit abandonment is not required to find waiver. *See Denkins*, 367 F.3d at 544. Here, Wynn effectively abandoned the argument because he failed to argue against such a finding in his sentencing memorandum, his sentencing memorandum's primary argument is premised upon his classification as a career offender, he did not raise any specific argument against his classification as a career offender at his resentencing, and his question regarding the discretion of the district court judge to avoid applying the enhancement assumes the initial premise that he qualifies as a career offender.

Beyond his argument that he has not waived his right to have his claims regarding his classification as a career offender heard by this court, Wynn submits that he could not have affirmatively waived his claim that one of his prior convictions—assault on a peace officer in violation of Ohio Revised Code § 2903.13—is not categorically a "crime of violence" because he has never raised the claim prior to this appeal. As a result, Wynn argues that his claim should be reviewed for plain error. For support, Wynn cites *United States v. Geerken*, 506 F.3d 461, 464 (6th Cir. 2007), where this court applied plain error review to a defendant's objection that the district court improperly applied a Guidelines enhancement because that claim was raised for the first time on appeal and was not raised before the district court at sentencing. However, *Geerken* involved a distinguishable procedural posture. Here, Wynn has appealed his sentence to this court once before, failed to raise his challenge to the classification of his conviction for assault on a peace officer as a

crime of violence in the district court at his original sentencing proceeding and at his resentencing, and did not raise the argument in his original appellate proceeding. The defendant in *Geerken* raised his argument in his first (and only) appeal to this court, 506 F.3d at 464, while Wynn did not raise his argument regarding his conviction for assault on a peace officer in his original appellate proceeding. Thus, in choosing to challenge in his original appeal only the classification of his conviction for sexual battery and not the classification of his conviction for assault on a peace officer, Wynn clearly waived his right to bring a subsequent challenge to the latter predicate conviction.

This conclusion follows from a direct application of our precedent. Under the "general rule that when a party fails to seek review of a district court's final order, it is barred from reasserting that issue in any subsequent appeals occurring in that case," this court has found that a party waived a claim "when it chose not to seek review . . . during the original . . . appellate proceeding." *United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000). In *McKinley*, the defendant was convicted of drug offenses and at sentencing the government urged the district court to impose a two-point enhancement for possession of a firearm during a drug crime, but the district court declined to do so. *Id.* at 717. The defendant appealed his sentence, and this court affirmed the convictions but vacated the sentence because it found that a leadership role enhancement should not have been applied to McKinley. *Id.* at 718. The government did not appeal the district court's decision not to apply the enhancement for possession of a firearm during a drug crime. *Id.* On remand, however, the government reasserted its argument regarding the firearm enhancement, and the district court once again rejected the argument. *Id.* On cross-appeals after resentencing, this court found that the

government had waived its claim that the district court erred in not applying the firearm enhancement because the issue should have been raised in the earlier appeal, and this was not a case where the government was unable to pursue the claim during the first proceeding. *Id.* Instead, "the firearms enhancement argument was just as available to the government during the first appeal as it is in the current proceeding." *Id.* This court also found that the policies behind the waiver doctrine supported finding the claim waived because "[t]he waiver doctrine exists to forestall this kind of perpetual litigation by notifying parties that they will forfeit their claims if they fail to seek review in the first appeal." *Id.* at 719.

Here, *Begay* governs both Wynn's claim that his prior conviction for sexual battery is not categorically "crime of violence" and his claim that his prior conviction for assault on a peace officer is not categorically a "crime of violence." As a result, Wynn's failure to challenge the classification of his assault on a peace officer conviction when he brought his initial appeal challenging his sentence in light of *Begay* seems particularly inexcusable given that he could have raised the same argument in his original appeal for both of the convictions used to support his classification as a career offender. Wynn's failure to raise this argument in his first appeal forecloses his ability to make such a claim in his subsequent appeals. *See id.* at 718; *United States v. Sedore*, 512 F.3d 819, 827 (6th Cir. 2008).

### III.

Wynn contends that his sentence should be vacated because the district court failed to make findings of fact or otherwise rule on his objections to the PSR, in violation of Federal Rule of Criminal Procedure 32(i)(3)(B). At resentencing, Wynn asked the court to consider whether his prior

conviction for assault on a peace officer should have been given one criminal history point instead of the two points assessed by the PSR because he felt that it might affect his custody classification by the BOP and potentially help him avoid being sent to the Hazelton Facility.

Federal Rule of Criminal Procedure 32 provides that at sentencing the district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). We review violations of Rule 32 for harmless error. *United States v. Marrero*, 651 F.3d 453, 473 (6th Cir. 2011). However, as Wynn assented to the district court's conclusion regarding his objection raised at sentencing, review is for plain error. *See United States v. Houston*, 529 F.3d 743, 753–54 (6th Cir. 2008).

Assuming Rule 32 even applies,[5] the district court's conclusion that the criminal history points were correctly scored appears to satisfy Rule 32 in that it resolves the objections raised by Wynn at resentencing. Fed. R. Crim. P. 32(i)(3)(B). The sentencing transcript demonstrates that the district court did, in fact, consider whether the conviction for assault on a peace officer was properly scored and found that it was, because there was an intervening arrest between the two convictions that Wynn had asked the court to examine. The district court consulted with the probation officer

---

[5]It is not clear that the controverted issue is one that would "affect sentencing," because Wynn admitted that the calculation of his criminal history score would not be affected by the resolution of the issue, and therefore it is unclear that the objection actually needed to be resolved by the district court under Rule 32. *See United States v. Stovall*, 337 F.3d 570, 573 (6th Cir. 2003).

and examined the information in the PSR to determine that "there was an intervening arrest between the two" and concluded that the criminal history points were "correctly scored then." The probation officer affirmatively responded, "Yes, Your Honor." After the court reached this determination, Wynn's counsel responded, "Okay. Okay, Your Honor. Thank you. As for any other objections to the presentence report, I don't have it now. Did you want me to present an argument concerning the memorandum at this time or –." This exchange was sufficient to satisfy Rule 32.

Although this court has held that exclusive reliance on the PSR when a matter is in dispute is not a ruling, *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003), in this case the district court did not demonstrate "blind reliance on the PSR" because it consulted with the probation officer and did not take the PSR's conclusion regarding the number of points applicable to the sentence as a given. *Cf. United States v. Darwich*, 337 F.3d 645, 667 (6th Cir. 2003). Further, Wynn presented no argument or evidence regarding whether there was or was not an intervening arrest, and did not challenge or object to the district court's determination that there was. Thus, the district court did not fail to address objections to the PSR, and did not err in so resolving the objections.

IV.

For the foregoing reasons, we affirm the judgment of the district court.