RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0190p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

NATHANIEL PEMBROOK (21-1503); ORLANDO JOHNSON (21-1519),

*Defendants-Appellants*.

> Nos. 21-1503/1519

———————————

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:14-cr-20525—Laurie J. Michelson, District Judge.

Decided and Filed:  August 21, 2023

Before:  BATCHELDER, GIBBONS, and NALBANDIAN, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:**  Benton C. Martin, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant in 21-1503.  Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant in 21-1519.  Erin S. Shaw, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

BATCHELDER, J., delivered the opinion of the court in which NALBANDIAN, J., joined.  GIBBONS, J. (pp. 22–27), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

ALICE M. BATCHELDER, Circuit Judge.  In this consolidated appeal, which follows a remand for resentencing, two convicted bank robbers challenge the district court's decision to

redo the guidelines calculations and sentencing proceedings entirely, and to apply a new sentencing enhancement that was not considered or applied in their original sentencing. We affirm.

**I.**

Nathaniel Pembrook, Orlando Johnson, and two other men robbed two jewelry stores at gunpoint. A jury convicted each of them of Hobbs Act robbery and conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a), possession of a firearm by a felon, § 922(g), and two counts of brandishing a firearm during and in relation to a crime of violence, § 924(c). The two § 924(c) counts carried a combined 32-year additional mandatory-minimum prison sentence: seven years for the first count and an additional "stacked" 25 years for the second. At sentencing, the district court calculated a guidelines range for the robbery, conspiracy, and felon-in-possession counts of 78-to-97 months for Pembrook and 92-to-115 months for Johnson, but due to the additional 32-year mandatory minimum, granted a downward variance and sentenced each defendant to 33 years: one year each for the first three counts, to run concurrently, plus the mandatory 32 years for the § 924(c) convictions.

The defendants appealed and we affirmed. *United States v. Pembrook*, 876 F.3d 812 (6th Cir. 2017). In that appeal, they argued that 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague, so the § 924(c) minimum sentences did not apply and resentencing was necessary. We rejected their argument based on then-binding Sixth Circuit precedent, but acknowledged that resentencing would be warranted if they were correct. *Pembrook*, 876 F.3d at 831-32.

When the Supreme Court remanded in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), which held that § 924(c)(3)(B) was unconstitutionally vague, we remanded this case for resentencing: "The defendants petitioned the Supreme Court for certiorari and the Court remanded for reconsideration of this issue. In the meantime, the Court has now held that § 924(c)(3)(B) is unconstitutionally vague. Consequently, we remand these cases to the district court for resentencing." *United States v. Pembrook*, 775 F. App'x 235 (6th Cir. 2019).

Prior to resentencing, the parties stipulated to the preparation of new presentence reports (PSRs) to exclude the 25-year additional sentence for the second § 924(c) count, to revise the

defendants' personal information, including their conduct during incarceration, and to adjust each PSR as necessary to ensure compliance with the current Guidelines Manual. The mandatory seven-year addition for the first § 924(c) count remained. Otherwise, the revised PSRs proposed advisory ranges of 87-to-108 months for Pembrook and 100-to-125 for Johnson, which were correspondingly higher than the calculations at their original sentencing because the new PSRs added a five-level enhancement for brandishing a firearm, which applied only after the second § 924(c) charge was excluded. U.S.S.G. § 2B3.1(b)(2)(C). When the government, in objection to the new PSRs, sought the application of a two-level enhancement for physical restraint of the victims, § 2B3.1(b)(4)(b), the defendants answered that the government had forfeited that enhancement by failing to assert it at the original sentencing.[1]

In deciding this dispute, the court explained that, absent an explicit limitation, remands are presumptively general and give district courts "authority to redo the entire sentencing process." *United States v. McFalls*, 675 F.3d 599, 606 (6th Cir. 2012). But the court took a narrow view of this apparently broad "authority to redo the entire sentencing process," agreeing with the defendants that a party cannot raise new issues on remand that it could have raised previously, but for certain exceptions, such as when "the issue only became logically relevant following remand." *United States v. Knight*, 789 F. App'x 531, 532 (6th Cir. 2020) (quoting *United States v. Boudreau*, 564 F.3d 431, 435 n.1 (6th Cir. 2009)). The court determined that the physical-restraint enhancement became relevant in this case only after removal of the second § 924(c) count and its 25-year additional sentence, and allowed it.[2] This raised Pembrook's advisory range to 108-to-135 months (rather than 87-to-108) and Johnson's to 121-to-151 (rather than 100-to-125).

Ultimately, the court resentenced Pembrook to 156 months in prison and Johnson to 168 months. Specifically, Pembrook received a below-guidelines 72 months for the robbery,

---

[1]The defendants label this "waiver," claiming the government waived its right to object to the omission of this enhancement from the PSRs at their resentencing by failing to object to its omission at their original sentencing. But, on these facts, this apparent failure to object would be "forfeiture." "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks and citation omitted).

[2]The court determined that the enhancement applied to only one of the robberies, not both.

conspiracy, and felon-in-possession counts, plus the 84-month mandatory minimum for the § 924(c) conviction. And Johnson received a below-guidelines 84 months for the robbery, conspiracy, and felon-in-possession counts, plus 84 months for the § 924(c) conviction.[3]

## II.

On appeal, the defendants argue that we ordered a "limited remand," thereby limiting the district court at resentencing to the specific issue that was decided in the preceding appeal, i.e., to only the issue that we ordered remedied on remand. An implication of their argument appears to be that we limited the district court's authority at resentencing to performing a rote deduction of the 25-year additional sentence for the second § 924(c) conviction based on *Davis*.[4] But they do not argue that here expressly, nor did they press that argument to the district court.

Prior to resentencing, Pembrook and Johnson both agreed to the preparation of new PSRs in anticipation of new guidelines calculations and new 18 U.S.C. § 3553 sentencing considerations. Both also submitted sentencing memoranda. The theme of Pembrook's memo was that much had changed with him since his original sentencing, such as the deaths of three close family members, the onset of severe health conditions, including a heart attack, and his completion of certification courses offered by the prison. Based on these factors, and his assessment of the § 3553 factors, he requested a below-guidelines sentence of 96 months (i.e., 12 months for the robbery, conspiracy, and felon-in-possession counts, plus the 84-month mandatory minimum). In opposing the physical-restraint enhancement, he argued forfeiture (that the government could have but did not raise it at the original sentencing or on direct appeal) and that, as the probation office had found, the conduct during the robbery was not "physical restraint" as described in the Guidelines.

---

[3]Note that the court imposed sentences that were below either version of the advisory ranges. That is, the sentences are below the lower ranges that were calculated without the physical-restraint enhancement.

[4]To the extent that the defendants rely on a pure application of *Davis* as the limit to their resentencing, that reliance is misplaced. The *Davis* Court concluded that its defendants were "entitled to a full resentencing, not just the more limited remedy the court had granted them" by removing the second § 924(c) count. *Davis*, 139 S. Ct. at 2336. "[W]hen a defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts so that the district court may increase the sentences for any remaining counts if such an increase is warranted." *Id.* (quotation marks and citation omitted). Consequently, "defendants whose § 924(c) convictions are overturned by virtue of today's ruling will not even necessarily receive lighter sentences." *Id.*

Johnson requested that the court strike the 25-year additional sentence for the second § 924(c) conviction and leave in place only the remaining 84-month mandatory minimum, but not because we had limited the district court on remand. On the contrary, his claim was that "the Court of Appeals provided no direction in regards to re-sentencing," so the district court should, "as a matter of discretion and lenity," accept his view of public policy and the § 3553 factors.

Prior to actual sentencing, the district court held a hearing on the parties' objections to the new PSRs. The government opened its argument by stating its position that "the remand from the Sixth Circuit for re-sentencing is a general remand. And [a] general remand allows this [c]ourt a full de novo re-sentencing." It concluded its opening argument the same way, asserting that the case law was "fairly clear that a remand for re-sentencing, unless it's limited by the Sixth Circuit, is a general remand. It's a remand for a full de novo review." In their counterarguments, neither Pembrook nor Johnson (nor either of the other two defendants) argued that we had ordered a limited remand or indicated any similar theory. From the transcript, they appeared hopeful that a de novo resentencing would inure to their benefit.

In announcing its ruling, the district court found that: "Here, the Sixth Circuit's opinion, quote, 'Remanding these cases to the District Court for resentencing,' . . . makes clear that it is a general remand and no party argues otherwise." Neither Pembrook nor Johnson (nor the other two defendants) objected to that statement. Based on that determination, and reference to several cases, most predominantly *McFalls*, 675 F.3d at 606, the court held that "on this general remand, . . . the Government is entitled to raise these new objections [to the new PSRs] and so I will address the objections." As mentioned, the court then held that the two-level physical-restraint enhancement applied for one of the robberies.

At the sentencing hearing the next day, neither Pembrook nor Johnson raised any new argument that this was a limited, not a general, remand. Nor did either defendant file any motion for clarification or reconsideration in the district court prior to filing this appeal.

Because the defendants did not argue to the district court that this was a limited remand, our review of this issue is for plain error. Under plain-error review, the defendants must "show (1) error (2) that was obvious or clear, (3) that affected [their] substantial rights and (4) that

affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (internal quotation marks and citation omitted). "Only in exceptional circumstances will we find such error—only, we have said, where the error is so plain that the trial judge was derelict in countenancing it." *Id.* (editorial marks omitted).

The record demonstrates that the district court considered this issue at the hearing on the objections to the PSRs, wherein the government cited case law to support its position that this was a general remand. No counsel for any of the four defendants opposed that argument. The district court analyzed the issue and cited published Sixth Circuit precedent that supported its ultimate finding that this was a general remand. Its primary reference was *McFalls*, which says:

> Unless otherwise specified, a remand order is presumed to be general. . . .
>
> A limited remand must explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. It must convey clearly the intent to limit the scope of the district court's review . . . by outlining the procedure the district court is to follow, articulating the chain of intended events with particularity, and leaving no doubt as to the scope of the remand. The language used to limit the remand should be unmistakable.
>
> . . . [T]he fact that an opinion addresses a single sentencing issue does not automatically lead to the conclusion that the remand is limited.
>
> . . .
>
> The presumption in favor of a general remand is necessarily strong in the context of a resentencing because the calculation of a sentence under the Guidelines requires a balancing of many related variables, and these variables do not always become fixed independently of one another. A change to one variable may have a cascading effect on other variables.

*McFalls*, 675 F.3d at 604-05 (quotation marks, editorial marks, and citations omitted); *see also United States v. Richardson*, 948 F.3d 733, 738 (6th Cir. 2020) ("To overcome the presumption that a remand is general, we must convey clearly our intent to limit the scope of the district court's review with language that is in effect, unmistakable." (quotation marks and citation omitted)); *United States v. Campbell*, 168 F.3d 263, 268 (6th Cir. 1999) ("With sentencing issues, in light of the general principle of de novo consideration at resentencing, this court should leave no doubt in the district judge's or parties' minds as to the scope of the [limited] remand.").

Nothing in our remand could be read to so clearly limit the scope of the district court's reconsideration.

None of the counsel for the four defendants objected to the district court's cited authority, analysis, or conclusion. Even if this were error, there is no basis in this record to find that it was "obvious," "clear," or "so plain that the trial judge was derelict in countenancing it."

We reject the defendants' limited-remand argument. This was a general remand.

## III.

The defendants argue that, even on a general remand for a de novo sentencing using a revised PSR, the government cannot request a sentencing enhancement that it could have requested, but did not request, at the original sentencing. That is, the defendants contend that the government forfeited or waived any argument for the enhancement. Ordinarily, "[w]hether a party has forfeited a right or argument is a mixed question of law and fact," in which "[w]e determine de novo whether the facts show that a party forfeited a right or argument." *United States v. Lara*, 590 F. App'x 574, 586 (6th Cir. 2014) (quotation marks and citation omitted).

## A.

While different Circuits have different views on this issue, our view is long settled and clear. When the district court conducts a de novo resentencing on a general remand, it may: "redo the entire sentencing process, including considering new evidence and [new] issues," *McFalls*, 675 F.3d at 604 (citing *United States v. Moore*, 131 F.3d 595, 597 (6th Cir. 1997)); "revisit other findings relating to the previous sentencing proceedings, and reverse its prior findings," *United States v. Jennings*, 83 F.3d 145, 151 (6th Cir. 1996); "consider new objections to the presentence report," *United States v. Garcia-Robles*, 640 F.3d 159, 166 (6th Cir. 2011) (paraphrasing *Jennings*); "take any evidence and hear any argument that it could have considered in the original sentencing proceeding," *United States v. Whren*, 111 F.3d 956, 959 (D.C. Cir. 1997) (referring to *Jennings* in a collection of cases); and allow parties to "raise issues even if they would otherwise have been waived," *United States v. Rigas*, 583 F.3d 108, 116 (2d Cir. 2009); *see also United States v. Norwood*, 49 F.4th 189, 204 (3d Cir. 2022) (explaining that "*de*

*novo* resentencing simply means that issues concerning the first sentence that were previously waived *may* be raised in the first instance [at resentencing] if warranted" (quotation marks and citation omitted)).[5]

In *Jennings*, 83 F.3d at 151, defense counsel did not object at the original sentencing hearing to certain relevant-conduct findings in the PSR. In the first appeal, we agreed with Jennings's challenge to the court's consideration of his motion for new counsel as well as the court's drug-quantity calculation and we remanded for resentencing. *Id*. at 147-48. At resentencing on remand, Jennings "objected to the relevant conduct section of his supplemental presentencing report even though that section was identical in the original presentencing report to which he had not previously objected"—that is, Jennings raised a claim at resentencing that he had forfeited (or waived) at the original sentencing. *Id*. at 151. The district court refused to consider the new objections and Jennings appealed. We reversed, holding:

> On remand, the only constraint under which the [d]istrict [c]ourt must operate, for the purposes of resentencing, is the remand order itself. Where the remand does not limit the [d]istrict [c]ourt's review, sentencing is to be *de novo*. The [d]istrict [c]ourt erred in refusing to consider Jennings' objections to the relevant conduct section of his supplemental presentence report.

> Such a rule is particularly compelling given the facts of this case. At the original sentencing, the relevant conduct was irrelevant to the determination of [Jennings'] base offense level. Were we to establish a rule precluding subsequent inquiry upon remand into such findings, then defendants would be forced to litigate every aspect of the sentencing report in the original hearing, even though irrelevant to the immediate sentencing determination in anticipation of the possibility that, upon remand, the issue might be relevant. Such 'front-loading' would

---

[5]*Rigas* relied on *United States v. Quintieri*, 306 F.3d 1217, 1228 n.6 (2d Cir. 2002), which holds that "when a resentencing results from a vacatur of a conviction, we in effect adhere to the *de novo default rule* of the Sixth . . . Circuit." *See Rigas*, 583 F.3d at 117. *Quintieri*, in turn, relied on *Jennings*, 83 F.3d at 151, as the leading case "creating a default rule of *de novo* resentencing." *Quintieri*, 306 F.3d at 1228 n.6. And we have cited *Quintieri* with approval. *See*, *e.g.*, *United States v. Driver*, 535 F.3d 424, 433 (6th Cir. 2008) ("This [general remand] will provide the opportunity for the district court to 'confront the offenses of conviction and facts anew.'"). In a recent opinion, the Second Circuit has reiterated that "a mandate may, of course, call for *de novo* resentencing, thereby allowing parties to reargue issues previously waived or abandoned." *United States v. Trimarco*, 2023 WL 2195999, at *3 (2d Cir. Feb. 24, 2023) (quoting *United States v. Malki*, 718 F.3d 178, 182 (2d Cir. 2013)).

*Norwood* relied on *United States v. Miller*, 594 F.3d 172, 179 (3d Cir. 2010), which relied on *Quintieri*, 306 F.3d at 1228 n.6, and cited *Jennings*, 83 F.3d at 151, as having "create[ed] a default rule of de novo resentencing."

unnecessarily increase the burden on district courts and this court. In the interest of judicial economy it will not be required.

*Id.*; *see also Campbell*, 168 F.3d at 266 ("The policy underlying . . . de novo resentencing is to give the district judge discretion to consider and balance all of the competing elements of the sentencing calculus."). Thus, we have "clearly stated that on remand following a direct appeal, a district court can consider de novo any arguments regarding sentencing if the remand order does not limit its review." *United States v. Saikaly*, 207 F.3d 363, 369 (6th Cir. 2000) (applying *Jennings*).

To restate *Jennings* succinctly for comparison purposes: (1) at the original sentencing, Jennings challenged the drug-quantity calculation for his sentence but did not challenge the relevant-conduct finding in the PSR (i.e., Jennings forfeited any objection to the relevant-conduct finding); (2) in the first appeal, Jennings challenged only the drug-quantity calculation; we agreed and remanded for de novo resentencing; (3) at resentencing, Jennings challenged the relevant-conduct finding, which "was identical in the original presentencing report," *Jennings*, 83 F.3d at 151, but the district court refused to consider the objections because they were forfeited; and (4) in the second appeal, we reversed, holding that "[t]he [d]istrict [c]ourt erred in refusing to consider Jennings' objections to the relevant conduct section of his supplemental presentence report." *Id.*

Because the present case likewise involved a general remand for a de novo resentencing, the parties were entitled to raise new issues at resentencing, even issues that were previously waived or forfeited. *See id.* at 147-51. The district court was required to consider new objections to the PSR and was free to alter or reverse its findings from the prior sentencing proceedings. Therefore, the government was entitled to request, and the district court was entitled to apply, the new sentencing enhancement even though the government did not request it during the original sentencing.

**B.**

Ignoring the law about de novo resentencing, the defendants rely on the law-of-the-case, appellate-forfeiture rule in which a party's failure to raise an issue on appeal bars that party from

raising that issue in a subsequent appeal after remand. *See United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000) ("While the district court may entertain any issues it feels are relevant to the overall sentencing decision (following a general remand), this does not give the parties license to re-assert issues that they should have raised during an earlier appeal." (citation omitted)).

As just discussed, however, *Jennings*, 83 F.3d at 151, and its progeny reject any limits on de novo resentencing. *See also Pepper v. United States*, 562 U.S. 476, 507 (2011) (holding that a "[general] remand[] for a *de novo* resentencing . . . effectively wipe[s] the slate clean"); *United States v. Mullett*, 822 F.3d 842, 852 (6th Cir. 2016) (allowing "new evidence and issues"). Specifically, *Jennings* entitles a party to raise an issue during resentencing even though the party waived or forfeited it in the original sentencing. Therefore, the defendants here would have us overrule the *Jennings* line of cases by placing a waiver limit in resentencing proceedings.

The government's counterargument relies on *McFalls*, 675 F.3d at 606, in which we succinctly rejected this same *McKinley*-based "waiver" argument. In *McFalls*, the district court sentenced McFalls as a career offender over his objection and, lacking any request for consecutive sentencing from the government, ordered the sentence "to run *concurrently* to his undischarged state sentence." *Id.* at 602-03. McFalls appealed the career-offender issue and that was the only issue on appeal; the government did not cross appeal. *Id.* at 602. In that first appeal, the government abandoned the career-offender claim, *id.*, and we ordered a general remand for de novo resentencing, *id.* at 606. At resentencing, "the [g]overnment requested that the sentence . . . run *consecutively* to McFalls's 25–year state sentence" and the court agreed. *Id.* at 603. In the second appeal, McFalls challenged the consecutive sentence on a number of grounds, but we affirmed, holding that "a general remand gives the district court authority to redo the entire sentencing process . . . [and the] court has discretion to order a federal sentence to run either concurrently or consecutively to an [un]discharged term of imprisonment." *Id.* at 606 (quotation marks and citations omitted). Similarly to the defendants here, McFalls argued in that second appeal that the government could not request consecutive sentences at his resentencing because it had not done so at the original sentencing, but we flatly rejected that argument:

> It is true that the waiver doctrine bars a party who fails to appeal a district court's final order from raising the issue in subsequent appeals in the same case. *United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000).
>
> It is also true that the Government did not appeal the original district court's decision to run the sentence for Count 1 concurrently to the state sentence.
>
> But it is *not* true that the Government is seeking to raise it now, on this second appeal. To the contrary, the Government seeks an affirmance of the re-sentence. Presumably the Government was content with the original sentence just as it is presently satisfied with the revised sentence.
>
> The waiver argument is therefore inapplicable.

*Id.* at 606 (paragraph breaks inserted). Given that *McFalls* rejected the same *McKinley*-based theory that the defendants press here, the defendants would have us discard *McFalls* for failing to submit to two appellate-forfeiture-doctrine cases, namely *Adesida* and *McKinley*.

In *United States v. Adesida*, 129 F.3d 846 (6th Cir. 1997), we stated the law-of-the-case, appellate-forfeiture rule as: "The law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *Id.* at 850 (citation omitted). But *Adesida* is not about issues forfeited at sentencing or about appeals from de novo resentencing. When the district court granted Adesida a 52-month downward departure (from 292 to 240) without any explanation, the government appealed, we remanded for the court to state its reasons, and—unable to do so—the court imposed a new 292-month sentence. *Id.* at 848. Adesida appealed again, but he did not challenge any aspect of his resentencing. Instead, he challenged his conviction, claiming, among other defects, that the indictment was duplicitous, which it was. *Id.* at 848-49. But we held that the appellate-forfeiture doctrine denied him relief. *Id.* at 849-50.

The appellate-forfeiture doctrine, and the cases that apply it, stand for a limited proposition: An appellant in a second appeal cannot raise in that second appeal an error that could have been, but was not, raised and resolved in the first appeal. In *Adesida*, for example, Adesida could not raise in his second appeal the duplicitous indictment (even though it was a meritorious claim of error) because he could have raised it in the first appeal but did not. The cases applying the appellate-forfeiture doctrine in the sentencing context all have the same basic setup—four stages split down the middle by an appellate judgment ordering resentencing:

1. <u>Criminal Sentencing</u>, in which there are two legal errors.

2. <u>First Appeal</u>, in which the appellant raises one legal error and wins; but neither party raises the other legal error, so that issue is not before the appellate panel.

\* Appellate Judgment, in which the panel reverses based on that first legal error, and orders a general remand for de novo resentencing.

3. <u>De novo Resentencing</u>, in which a party (either the defendant or the government) raises the second legal error, and the district court commits (or re-commits) that same error.

4. <u>Second Appeal</u>, in which the appellant raises the second legal error to the appellate panel.

To avoid any confusion—namely the defendants' intended confusion—keep in mind that appeals and sentencing proceedings are different things. And the appellate-forfeiture doctrine applies to only *appeals*, not to district court (sentencing) proceedings. Moreover, the appellate-forfeiture doctrine applies only to *appellants* in the second appeal. Consider three scenarios.

Scenario 1—The actual scenario here. The government did *not* request (so the district court did not consider) an applicable Sentencing Enhancement in the original sentencing. But after the defendants' successful appeal on an unrelated error and our remand for de novo resentencing, the government requested the Enhancement in the de novo resentencing and the district court properly approved it (i.e., there was no second error). The defendants appeal, claiming that the government's failure to request the Enhancement in the original sentencing forfeits (or waives) its ability to request that Enhancement in the de novo resentencing, regardless of its merit. As explained in the prior section, that is simply wrong—either party can raise any issue (e.g., sentencing adjustment) in the de novo resentencing as if the original sentencing had never happened. *See*, *e.g.*, *Mullet*, 822 F.3d at 852 ("[W]hen we remand a criminal case for new sentencing and do not limit the court's discretion through a limited remand, it may 'redo the entire sentencing process, including considering new evidence and issues.'" (quoting *McFalls*, 675 F.3d at 604)). Because neither party is challenging the Enhancement on the merits in the second appeal, the appellate-forfeiture doctrine does not apply. Moreover, because the government is not the appellant in the second appeal, the appellate-forfeiture doctrine would not apply anyway.

Scenario 2—Assume that the district court considered and erroneously rejected the Sentencing Enhancement in the original sentencing (committing an error), but the government did not appeal that error. After the defendants' successful appeal on an unrelated error and our general remand for resentencing, the government again requested that Enhancement at the de novo resentencing and, again, the district court erroneously denied it (recommitting that same error). This is the common application of the appellate-forfeiture doctrine. *See*, *e.g.*, *Mullet*, 822 F.3d at 847 ("In criminal case after criminal case, we have declined to allow a criminal defendant who fails to challenge part of a conviction in an earlier appeal to raise it in a later appeal." (citing *Adesida* and *McKinley*, among others)). Because the government could have raised that error in the first appeal (via cross-appeal, if necessary), wherein the first panel could have decided that issue prior to remand, and thereby preemptively corrected it for the de novo resentencing, the appellate-forfeiture doctrine would bar the government from raising that error in the second appeal.[6] Note that the government is *not* prohibited from re-requesting the Enhancement in the de novo resentencing (in hopes that the district court would reverse course, as in Scenario 3 below) because the appellate-forfeiture doctrine has no bearing on sentencing in the district court.

Notice also that this hypothetical Scenario 2 demonstrates the fallacy of the defendants' contention that, if the appellate-forfeiture doctrine does not apply in this case, then it would

---

[6]The defendants cite two cases that—contrary to the defendants' intended purposes—fit neatly under Scenario 2, albeit as subsequent appeals by the defendant rather than by the government: *United States v. Munar*, 525 F. App'x 305 (6th Cir. 2013), and *United States v. Traxler*, 517 F. App'x 472 (6th Cir. 2013).

In *Munar*, 525 F. App'x at 306-07, the district court applied several sentencing enhancements, of which Munar challenged one on direct appeal, successfully. On remand, the district court again applied the others and Munar challenged them in his subsequent appeal. We applied the appellate-forfeiture doctrine because the enhancements were in the original sentencing, so Munar was obliged to challenge them in his first appeal or else forfeit appeal of them in the second appeal.

In *Traxler*, 517 F. App'x at 473-74, the district court applied two special conditions to Traxler's supervised release, which Traxler did not challenge on direct appeal. On remand, the court applied the same special conditions and Traxler challenged them in the subsequent appeal. We applied the appellate-forfeiture doctrine because the special conditions were in the original sentencing: by failing to raise them in the first appeal, Traxler forfeited his ability to challenge to those conditions in that appeal and in his subsequent appeal(s).

Neither case forbids the defendants from challenging, or the court from reconsidering, the enhancements at the de novo resentencing, nor does either case concern an appellee who did not seek any review on appeal.

never apply after a general remand for de novo resentencing.**[7]**  The appellate-forfeiture doctrine applies in a specific context, just not the context of the present case.

Scenario 3—Assume that the district court erroneously rejected an applicable Sentencing Enhancement in the original sentencing (creating an error), but the government did not appeal that error.  After the defendants' successful appeal on an unrelated issue and our general remand for resentencing, the government again requested that Enhancement in the de novo resentencing, but this time the district court accepted it.  *See United States v. Duso*, 42 F.3d 365, 369 (6th Cir. 1994) ("If the district judge errs [at sentencing] in favor of the defendant, . . . the defendant bears

---

**[7]**Consider two other Scenario 2 cases, also second appeals by the defendant rather than the government: *United States v. Wynn*, 485 F. App'x 766 (6th Cir. 2012), and *United States v. Sedore*, 512 F.3d 819 (6th Cir. 2008).

In *Wynn*, 485 F. App'x at 767, the district court found that Wynn was a career offender based on two prior convictions: one for sexual battery and the other for assault on a peace officer.  In his first appeal, Wynn raised only the sexual-battery issue, arguing that it was not a crime of violence.  On appeal, however, we remanded for a de novo resentencing based on *Begay v. United States*, 553 U.S. 137 (2008), *abrogated by Johnson v. United States*, 576 U.S. 591 (2015).  *Id.*  At resentencing, Wynn made some arguments with respect to the sexual-battery case, but he did not object to the court's consideration of the assault-on-a-police-officer argument.  *Id.* at 770-72.  When he attempted to raise that argument in his second appeal, the government argued that he had waived it.  *Id.* at 772.

We relied on *McKinley* for the proposition that: "Under the general rule that when a party fails to seek review of a district court's final order, it is barred from reasserting that issue in any subsequent appeals occurring in that case, this court has found that a party waived a claim when it chose not to seek review during the original appellate proceeding."  *Id.* (quotation and editorial marks omitted) (quoting *McKinley*, 227 F. 3d at 718).  Thus, we concluded that "Wynn's failure to raise this argument in his first appeal forecloses his ability to make such a claim *in his subsequent appeals*."  *Id.* at 773 (emphasis added) (citing *McKinley*, 227 F. 3d at 718, and *Sedore*, 512 F.3d at 827).

In *Sedore*, 512 F.3d at 821, the district court considered Sedore's objections to the PSR and agreed with him that his crime had not involved 50 to 250 victims, based on Sedore's assertion that there were 31 victims.  In the first appeal, Sedore raised several claims, including a *Booker* claim, but no claim concerning the number of victims; and we reversed and remanded for resentencing based on *Booker*.  *Id.* at 821-22.  In his sentencing memorandum for re-sentencing, Sedore argued that "the IRS was the [only] victim, rather than the individual taxpayers," so "the number of victims is one," *id.* at 826, and "the district court erred when it found at his first sentencing that there were more than ten victims," *id* at 822.  At the resentencing hearing, however, the district court did not address "the number of victims argument . . . and [Sedore] did not raise it."  *Id.*

When Sedore raised the number-of-victims issue in his second appeal, the government argued that he had waived it "because [he] is bound by his admission at his initial sentencing that there were 31 victims."  *Id*. at 826-27.  We agreed and explained that "[i]t would be unreasonable to allow a defendant to admit to a particular fact during sentencing, and then argue against the existence of that fact *on appeal*."  *Id.* at 827 (emphasis added).  We also quoted *McKinley*, 227 F. 3d at 718 ("when a party fails to seek review of a district court's final order, it is barred from reasserting that issue *in any subsequent appeals* occurring in that case" (emphasis added)), and concluded that because no argument about that error "was raised on his appeal of that sentence, [Sedore] is bound by his admission and any argument to the contrary is waived [in this second appeal]."  *Id.*

Neither of these cases suggested, much less held, that the defendant could not raise these arguments at resentencing; both hold only that the defendants forfeited (waived) these claims for purposes of a second *appeal*.

the risk that the error may be corrected [by the district judge at resentencing] against the defendant's favor."). The defendants then appeal the application of that Enhancement. Because the government is not the appellant in this second appeal, the appellate-forfeiture doctrine does not apply to the government. The question would be whether appellate forfeiture would apply to the appealing defendants. Because the error was favorable to them at the original sentencing, they had no cause to raise it in the first appeal, so appellate forfeiture would not bar them from raising that issue in the second appeal. This exception to the appellate-forfeiture rule "allow[s] parties to address issues on remand not addressed during the initial sentencing appeal if the . . . issue only became logically relevant following remand." *United States v. Boudreau*, 564 F.3d 431, 435 n.1 (6th Cir. 2009) (citing *United States v. Hebeka*, 89 F.3d 279, 284 (6th Cir. 1996)).

The point to all of this is that the appellate-forfeiture rule does not apply in this case. The defendants confuse a sentencing proceeding with an appeal and seek to apply the appellate-forfeiture rule to sentencing-and-resentencing as if they were first appeal and second appeal. That ignores and contradicts our law about the breadth of de novo resentencing. And it misunderstands the appellate-forfeiture doctrine in its plain language, application, and purpose.

The defendants insist that *McKinley* limits the otherwise limitless de novo resentencing to exclude issues that were forfeited (waived) in the original sentencing. But *McKinley* is a case about sentencing issues raised and forfeited *on appeal*, not at sentencing and de novo resentencing. Thus, *McFalls*, 675 F.3d at 606, has already rejected *McKinley* in this context.

*McKinley*, 227 F.3d at 717-19, is a three-page opinion and the entire discussion of the waiver issue totals two paragraphs. But here is what happened. At McKinley's original sentencing, the court found that McKinley played a leadership role, but also denied the government's request for a two-level enhancement for possession of a firearm during a drug crime. McKinley appealed the leadership-role issue, but the government did not appeal the denial of the two-level enhancement. We found that McKinley did *not* play a leadership role, reversed, and remanded for resentencing. At resentencing, the government again argued for the two-level enhancement, which the district court again denied (recommitting the same alleged error). In McKinley's ensuing (second) appeal, alleging other errors, the government cross-appealed the court's denial of the two-level enhancement. Obviously, this is hypothetical

Scenario 2, *supra*.   In rejecting the government's appeal, we explained that, because "[t]he government chose not to appeal [that issue in the first appeal] . . . , we did not have notice that this question remained an issue and did not have an opportunity to dispose of this issue as part of the [first] appellate proceeding." *Id.* at 718.   So, we applied the "general rule" of the appellate-forfeiture doctrine to deny relief:

> We find . . . that the government waived this claim when it chose not to seek review of this decision during the original [first] appellate proceeding.   Our decision on this issue is in accordance with the *general rule* that when a party fails to seek review of a district court's final order, it is barred from reasserting that issue in any subsequent *appeals* occurring in that case.

*Id*. (emphasis added) (citations omitted).   In the next sentence, we elaborated on this holding:

> While the district court may entertain any issues it feels are relevant to the overall sentencing decision (following a general remand), *Hebeka*, 89 F.3d at 284-85 (6th Cir. 1996), this does not give the parties license to re-assert issues that they should have raised during an earlier appeal.
>
> For example, in *Hebeka*, we allowed the government to seek [appellate] review of an argument that it been unable to pursue during the initial appeal, but which became logically relevant in light of our decision and accompanying remand instruction.   *Id.*   As a result, the government did not 'waive' the argument during the initial appeal because it was unable to pursue the claim during the first [appellate] proceeding.   That is not the case here, however, where the firearms enhancement argument was just as available to the government during the first appeal as it is in the current [second appellate] proceeding.   As a result, we find that the government has waived this argument and is therefore precluded from asserting it at this later date [i.e., second appeal].

*McKinley*, 227 F.3d at 718 (paragraph break inserted).   The case cited in that passage, *Hebeka*, says that "unless restricted by the remand order," district courts have "broad discretion . . . to reconsider sentencing factors on a sentencing remand . . . [and] begin anew, so that fully de novo resentencing is entirely appropriate." *Hebeka*, 89 F.3d at 284-85 (quotation marks and citations omitted).   That is, *Hebeka* did not limit the scope of the resentencing proceeding in any way.

The defendants nonetheless read the first sentence in the above *McKinley* passage as if it says: "this does not give the parties license to re-assert issues *at resentencing* that they should have raised during an earlier appeal."   But the sentence does not say that.   Rather, when read in context, it says: "this does not give the parties license to re-assert issues *in the subsequent appeal*

that they should have raised during an earlier appeal." Certainly, *Hebeka* provides this context, as does the *McKinley* court's earlier reference to the "general rule" of appellate forfeiture, and the simple fact that *McKinley* overwhelmingly discusses appeals and the appellate court.

As *McKinley* further explains:

This [appellate-forfeiture] result is in accordance with the policy arguments behind the waiver doctrine. Had the government raised this issue in the initial [appellate] proceeding, we could have disposed of it accordingly. Instead, the government seeks [appellate] review of this issue as this case appears before us for the second time. Were we to accept the government's invitation to review [in this second appeal] the case and remand to the district court for further proceedings on the firearms enhancement issue, we would doubtless see this case for a third time when the losing party appealed the district court's decision on this issue. The [appellate-forfeiture] doctrine exists to forestall this kind of perpetual litigation by notifying parties that they will forfeit their claims if they fail to seek review in the first appeal. Here the government failed to appeal the district court's decision on the sentencing enhancement when the opportunity first presented itself [in the first appeal] and therefore *relinquished its ability to gain review of the issue by this court [in this second appeal]*.

*Id.* at 718-19 (emphasis added). Pause for a moment to fully appreciate that closing sentence: due to its forfeiture, the government "relinquished its ability to gain *review* of the issue *by this court.*" This does *not* say that the government relinquished its ability to re-assert the issue to the district court at resentencing. *McKinley* is a case about *appellate* forfeiture, limiting what parties may raise in a second *appeal*. *McKinley* does not limit the issues that parties can raise at the de novo resentencing—that issue was neither before the *McKinley* court nor relevant to its decision.

Under *Jennings*, 83 F.3d at 151, and its progeny, *see* Section III.A, *supra*, either party at a de novo resentencing is entitled to present new evidence or raise new issues, even issues that were previously waived or forfeited. And the district court is empowered to revisit and reverse its findings from the prior sentencing, consider new objections to the PSR, and admit any evidence and hear any argument that it could have considered in the original sentencing proceeding.

The defendants would have us overrule the *Jennings* line of cases (and *McFalls*) based on one out-of-context sentence in *McKinley*. No other case in the Sixth Circuit holds that the waiver doctrine limits the issues a district court can consider in a de novo resentencing.**[8]**

---

**[8]**After we heard argument in this appeal and while this opinion was pending, another panel heard argument and issued an opinion in *United States v. Lanier*, No. 21-5619, 2023 WL 4963190 (6th Cir. Aug. 3, 2023). In that case, after convictions for conspiracy to commit Hobbs Act robbery and brandishing a firearm, the Probation Department prepared a PSR for the district court. *Id.* at *2. The most noteworthy aspect of that PSR, for our purposes, is that the Probation Officer did *not* include a vulnerable-victim enhancement, U.S.S.G. § 3A1.1(b)(1), despite having facts to support it. Even without it, that PSR proposed an advisory range of 210 to 262 months for the Hobbs Act counts. *Id.* Adding the mandatory minimums based on the § 924(c) residual clause (84, 300, and 300 months) led to an overall range of 894 to 946 months. *Id.* The district court agreed with the PSR and sentenced Lanier to 946 months, Lanier appealed, and we affirmed. *Id.* The government did not raise the PSR's omission of the vulnerable-victim enhancement at sentencing, nor did it cross appeal concerning that issue. *Id.* Given the 946-month (i.e., 79-year) sentence, that is hardly surprising. *See*, *e.g.*, *Jennigs*, 83 F.3d at 151; *McFalls*, 675 F.3d at 606.

When *Davis* invalidated the § 924(c) residual clause, the district court granted Lanier's § 2255 motion, vacated the § 924(c) convictions, and ordered the Probation Department to prepare a new PSR for the forthcoming resentencing hearing. *Id.* This time, the Probation Officer *did* propose the vulnerable-victim enhancement in the PSR, based on the same facts from the prior PSR. *Id.* The district court denied Lanier's objection and included the enhancement in its guideline calculation. *Id.* Note that the government did not ask the Probation Officer to include the enhancement, nor did it file any objections at all to the PSR. *Id.* As the dissenting judge explained:

> [T]he government . . . never requested the vulnerable victim enhancement in [either the] original sentencing . . . [or] the present sentencing under review. Instead, the probation officer—not the government—recommended the vulnerable victim enhancement, as Lanier acknowledged in his objection to the [PSR]. In Lanier's words: 'the U.S. Probation Officer asserts, pursuant to U.S.S.G. § 3A1.1(b)(1), a two-level enhancement for vulnerable victim applies.'
>
> It was unnecessary for the government to argue for the enhancement for the probation officer to include it in the PSR. The probation office operates as an arm of the district court . . . [in] creat[ing] [the PSR]. Probation officers receive their appointment from the district court, . . . [they] submit the PSR to the district court before sentencing, and . . . [they] must identify all applicable guidelines and policy statements of the Sentencing Commission. We do not require the government to affirmatively argue for every enhancement recommended by a PSR.

*Lanier*, 2023 WL 4963190, at *12 (Bush, J., dissenting) (certain quotation marks, editorial marks, and citations omitted) (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018); Fed. R. Crim. P. 32(d)(1)(A); *United States v. Whitelow*, 596 F. App'x 382, 385 (6th Cir. 2015)).

After resentencing, Lanier appealed, claiming, among other things, "that the district court erred when it applied the vulnerable victim enhancement even though the enhancement was not recommended or litigated at his original sentencing." *Id*. at *3. The panel majority agreed, concluding that, despite this being a general remand for de novo resentencing, *id.* at *7, the district court could not apply the vulnerable-victim enhancement when recalculating Lanier's sentence because the government had "waived" that enhancement by failing to pursue it at Lanier's original sentencing, *id*. at *8. When the dissent pointed out that the majority was applying the waiver doctrine to the Probation Officer—inasmuch as this was merely the Probation Officer's recommendation in the PSR to the district court wholly independent of the government—the majority answered that, as "the party that bore the burden to prove that the enhancement applied," the government's "waiver of the issue in the first sentencing extended to the second [sentencing]." *Id*. at *8 n.12. Thus, *Lanier* holds that if the government fails to prove the applicability of a sentencing enhancement at the original sentencing hearing, then the Probation Officer may not propose that enhancement in any future PSR nor may the district court consider it at any future resentencing.

If *McKinley* truly meant to redefine the scope of de novo resentencing by applying forfeiture (waiver), and correspondingly affecting the *Jennings* line of cases in such a significant way, it surely would have analyzed those cases and explained its reasoning—or at least mentioned them. That is, if *McKinley* truly meant to hold that a party cannot in a de novo resentencing raise an issue that could have been but was not raised in the original sentencing, then we would expect *McKinley* to have said so clearly and given some legal support for that unprecedented holding.[9]

*McKinley* did not do any of that because *McKinley* was not addressing the district court's conduct of its sentencing and resentencing proceedings. *McKinley* was a two-paragraph analysis in a three-page opinion applying the established appellate-forfeiture doctrine's "general rule" to

---

But because this proposition contradicts—and ignores—the entire body of Sixth Circuit precedent about de novo resentencing, from *Jennings* to *McFalls* to *Mullett*, as detailed herein, it is foreclosed by precedent and dead on arrival. It also misreads and misrepresents *McKinley*, as is also thoroughly discussed herein. It confuses district court sentencing proceedings with appeals, as the defendants have done here, with the same mistaken conclusion. And, as the *Lanier* dissent explained, it confuses the roles of the Probation Department and the prosecution.

[9]One other odd, unpublished opinion warrants mention. In *United States v. Mitchell*, 232 F. App'x 513, 516 (6th Cir. 2007), Mitchell appealed based on *Booker*, but did not appeal the application of a § 2K2.1(b)(5) enhancement even though he had objected to it at the sentencing hearing. We remanded based on *Booker* and at resentencing Mitchell again objected to the § 2K2.1(b)(5) enhancement. The district court applied the enhancement again anyway and Mitchell appealed that issue. *Id.* at 515. We explained that "Mitchell could have raised his objection to the district court's application of the § 2K2.1(b)(5) enhancement along with his *Booker* claim in his first appeal, giving us the opportunity to dispose of the issue, and thereby foreclosing any further appeals based on that issue." *Id.* at 517 (citing *McKinley*, 227 F.3d at 718). But "[b]ecause Mitchell did not object to the district court's application of the enhancement under § 2K2.1(b)(5) in his prior appeal, Mitchell is foreclosed from raising the objection now [in this second appeal]." *Id.* Up to this point, *Mitchell* is an ordinary appellate-forfeiture-doctrine (i.e., Scenario 2) opinion.

The unusual aspect in *Mitchell* is the dicta, which says: "Even if we were to conclude that . . . [this] was a general remand, as Mitchell argues, Mitchell still waived his objection to the [§ 2K2.1(b)(5)] enhancement because, even under a general remand, a party cannot raise claims it could have raised in a prior appellate proceeding." *Id.* While not explicit, this appears to mean a waiver of objection *at the resentencing hearing*, not waiver of a claim in the subsequent appeal. Although *Mitchell* buttresses this dicta with the claim that "[t]his was made clear in *McKinley*," *id.* (quoting *McKinley*, 227 F.3d at 718), the opinion does not elaborate or explain this proposition in any way.

In fact, the opinion elsewhere says: "[Mitchell] contends that his objection to the district court's use of the enhancement was not waived because in a general remand the Guidelines range is recalculated by the district court and therefore his objection can be made anew. Mitchell's argument is incorrect." *Id.* But this conclusory statement ends there. The opinion does not explain it or provide authority. Nor does the *Mitchell* opinion ever acknowledge the *Jennings* line of cases, much less its departure from them. And, given the *Jennings* cases, it appears wrong.

Regardless, as with the questionable wording in *McKinley* upon which this questionable dicta relies, it is doubtful that *Mitchell* intended to redefine the scope of de novo resentencing by applying waiver and limiting the *Jennings* line of cases in such a significant way without analyzing those cases or explaining its reasoning.

forbid the appellant in a second appeal from raising in that second appeal an alleged error that could have been but was not raised and resolved in the first appeal. *McKinley*, 227 F.3d at 718.

The appellate-forfeiture doctrine has no application in the present case.

**C.**

A sentencing court must endeavor to apply the appropriate enhancements and calculate the correct guidelines because of, regardless of, or in spite of the parties' arguments. *See* 18 U.S.C. § 3553(a)(4). In *McFalls*, we commented that, "McFalls took a calculated risk that a remand would result in a potentially harsher sentence." *McFalls*, 675 F.3d at 607 (citing *Duso*, 42 F.3d at 368-69); *cf. id*. at 605 (quoting *Campbell*, 168 F.3d at 268 ("When this court issues a limited remand, it must make certain that reconsideration of the issues remanded will not alter the proper calculation of other sentencing variables outside the scope of the remand.")). This is entirely consistent with *Jennings*'s refusal to limit de novo resentencing after a general remand.

**D.**

To recap, a general remand intends a de novo resentencing in which either party may present new evidence or raise new issues, even issues that were waived at the original sentencing. The district court conducts the entire sentencing anew. A sentencing proceeding is not an appeal, so the appellate-forfeiture doctrine does not apply to sentencing proceedings as if they were appeals. And a defendant being resentenced on remand risks that the recalculated guidelines and reassessed sentencing factors might lead to a harsher sentence.

We reject the defendants' claim that the government was barred by forfeiture (waiver) from requesting the additional sentencing enhancement at the de novo resentencing.

**IV.**

Relying on the contention that the physical-restraint enhancement was inapplicable due to the government's forfeiture, Johnson argues that the court's guidelines calculations led to a procedurally unreasonable sentence. We review for abuse of discretion, while acknowledging that an improper calculation of the guidelines is a "significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007); *Molina-Martinez v. United States*, 578 U.S. 189, 199 (2016).

Based on our determination that the physical-restraint enhancement was not barred by forfeiture and the district court's determination that the facts of the robbery in this case satisfy that enhancement, we conclude that the district court did not err by applying the enhancement, calculating the advisory guidelines range, or imposing the resulting sentence.

We reject Johnson's procedural-reasonableness argument.

**V.**

For the forgoing reasons, we AFFIRM the judgment of the district court.

—————————

**DISSENT**

—————————

JULIA SMITH GIBBONS, dissenting.    Because I would hold that the government forfeited the physical restraint sentencing enhancement, I respectfully dissent.

I.

We are asked in this case to determine whether the government waived[1] the physical restraint sentencing enhancement when it did not request the enhancement at the original sentencing or appeal its omission in the first appeal.    Resolution of the issue requires us to reconcile our caselaw regarding general remands for resentencing and our caselaw regarding the applicability of the waiver doctrine in the sentencing context.    The majority opinion conducts a thorough examination of our caselaw and concludes that a general remand supersedes any waiver issues.    Based on my differing interpretation of how to reconcile those same cases, I respectfully disagree.    Instead, I read our precedent alongside the doctrine of waiver to support a framework that permits a clean-slate resentencing on general remand only for those issues preserved by the parties.    Under this framework, I would conclude that the government waived the sentencing enhancement, rendering it unavailable in the resentencing proceeding.

II.

I start with our common ground.    Remands for resentencing are presumptively general, with a specific indication of our intent for a limited remand to overcome that presumption. *See United States v. McFalls*, 675 F.3d 599, 604–05 (6th Cir. 2012).    Like the majority opinion, I conclude that the remand in this case was general because it lacked such an indication.    Next, all agree that the waiver doctrine requires parties to timely assert an argument or relinquish that argument going forward in the proceedings.    Here, the government did not request the sentencing

---

[1]Typically, waiver refers to a party's affirmative renunciation of an argument or right, and forfeiture refers to a party's failure to raise an argument, whereby the party can no longer raise it in the case. *See Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 443 n.6 (6th Cir. 2022).    Thus, here, the argument is that the government forfeited the sentencing enhancement, but for clarity, I refer to it as waiver because many of the relevant cases use that term.

enhancement at the original sentencing nor appeal its omission during the first appeal, triggering the defendants' argument that the waiver doctrine applies.

I depart from the majority, however, in assessing the combined effect of these two features of this case—the de novo resentencing and the potential waiver of an argument. I disagree with the majority's conclusion that the government's choice not to pursue the enhancement in the original sentencing or first appeal did not waive its application on this general remand.

## III.

As the majority notes, we have explained in prior cases that general remands have a broad scope, permitting resentencing courts to "redo the entire sentencing process, including considering new evidence and issues," *McFalls*, 675 F.3d at 604 (citation omitted), "revisit other findings relating to the previous sentencing proceedings, and reverse its prior findings," *United States v. Jennings*, 83 F.3d 145, 151 (6th Cir. 1996) (citation omitted); and "consider new objections to the presentence report," *United States v. Garcia-Robles*, 640 F.3d 159, 166 (6th Cir. 2011). *See* Maj. Op., at 7–8. In sum, we have indicated that a general remand "effectively wipes the slate clean," *McFalls*, 675 F.3d at 606, permitting a district court to consider any issues, without regard for any prior proceedings.

But, despite these statements about the broad scope of general remands for resentencing, we have previously acknowledged that waiver can apply in this context. We have applied it against both defendants and the government. *See United States v. Wynn*, 485 F. App'x 766, 772 (6th Cir. 2012) (finding that the defendant waived any objection to the classification of his conviction and could not challenge it as a predicate offense on remand); *United States v. Sedore*, 512 F.3d 819, 827 (6th Cir. 2008) (holding that the defendant waived any argument that there was only one victim for sentencing-enhancement purposes because he did not raise it in his first appeal or resentencing hearing); *United States v. Mitchell*, 232 F. App'x 513, 517 (6th Cir. 2007) ("Because [the defendant] did not object to the district court's application of the enhancement under [U.S.S.G.] § 2K2.1(b)(5) in his prior appeal, [he] is foreclosed from raising the objection now."); *United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000) (holding that the

government waived the application of a sentence enhancement by abandoning it in the first appeal).

At first glance, it is not apparent how to square our precedent. Some of our cases suggest that general remands effectively "redo" the entire sentencing process, as if the first proceeding did not exist. Others hold that a party's failure to raise an argument in the original proceeding can limit the availability of that argument in the second proceeding. But these cases can be reconciled, providing us a framework with which to assess waiver in this context. First, a general remand creates a clean slate, *McFalls*, 675 F.3d at 606, only for those issues *preserved* by the parties. Under our case law, a party may re-assert issues that were raised in prior proceedings, regardless of any earlier determination on those issues. A party may also assert an issue or argument for the first time on remand, but only if it was unavailable or logically irrelevant in the first proceeding. *See Knight*, 789 F. App'x at 532.

We outlined this approach in *McKinley*. There, we explained that a district court's exercise of discretion to "entertain any issues it feels are relevant to the overall sentencing decision (following a general remand) . . . does not give the parties license to re-assert issues that they should have raised during an earlier appeal." 227 F.3d at 718 (citing *United States v. Hebeka*, 89 F.3d 279, 284–85 (6th Cir. 1996)). Instead, a party may raise a new issue only if the party had "been unable to pursue [it] during the initial appeal." *Id.*

This approach both represents the best understanding of our existing caselaw and comports with the waiver doctrine's underpinnings—the belief that "[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better . . . than one who had argued and lost." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997) (citation omitted). It also aligns with waiver's purposes—to "discourage[ ] 'perpetual litigation' and promote[ ] finality in criminal proceedings by requiring that parties seek review of a claim in the first appeal." *United States v. Traxler*, 517 F. App'x 472, 474 (6th Cir. 2013) (quoting *McKinley*, 227 F.3d at 719).

IV.

The majority interprets these cases differently, reading them to mean that waiver applies only on appeal and not during the resentencing proceeding itself. *See* Maj. Op., at 12–20. Thus, in the majority's view, waiver would apply if a party does not appeal a particular issue in the first appeal but then asks us to review that issue on appeal after a resentencing proceeding. I do not believe that interpretation incorporates a complete view of our caselaw, however, for the reasons identified above.

The majority cites *United States v. Jennings*, 83 F.3d 145 (6th Cir. 1996), to support its conclusion that waiver does not preclude first-time arguments on a general remand. And the majority contends that applying waiver in this case would amount to overruling *Jennings* and the cases that followed. Maj. Op., at 18–20. But *Jennings* actually illustrates the "unavailable or logically irrelevant" nuance in our waiver doctrine. In *Jennings*, defense counsel did not object to the presentence report's identification of "relevant conduct" in the original sentencing proceeding. 83 F.3d at 151. On remand for resentencing, the district court did not permit Jennings to object to the relevant conduct because the objections were "outside the scope of the issues before [the] Court on remand." *Id.* We reversed. *Id.* But not by expressly rejecting waiver altogether. Instead, we concluded that the remand was a general remand and any objection to the relevant conduct was not logically relevant in the original sentencing because the relevant conduct had no effect on the base offense level at that time. *Id.* The relevant conduct "was now of considerable consequence" on remand, however, because it raised Jennings's "offense level from twenty-four to twenty-eight." *Id.* So, the objection was logically irrelevant in the first sentencing but not in the second, precluding waiver. And unlike *Jennings*, here, there is no question that the physical restraint sentencing enhancement was relevant in the first sentencing and in the resentencing. Thus, applying waiver here does not overturn *Jennings* but would be consistent with it, as well as our other caselaw.

Even under the majority's reasoning, waiver should still apply in this case. Maj. Op., at 8. As we explained in *McKinley*, "when a party fails to seek review of a district court's final order, it is barred from reasserting that issue in any subsequent appeals occurring in that case." 227 F.3d at 718. Here, in the original sentencing order, which is a final order for waiver

purposes, the district court did not apply a physical restraint enhancement. The government did not raise the physical restraint enhancement in the first appeal, despite the opportunity to do so, thereby waiving the issue going forward. Defendants are now enforcing that waiver, as they did during the resentencing proceeding in the district court.**2**

The majority's reliance on *McFalls* is also misplaced. *McFalls* involved a different issue than we address here—whether the defendant's sentence should run concurrently or consecutively. *Id.* at 602–06. For that issue, neither party bears the burden to establish whether a sentence should run concurrently or consecutively, as discretion vested in the district court by statute. *See* 18 U.S.C. § 3584(b). Waiver does not make sense in that context. In contrast, for the application of an enhancement, the government bears the burden of proof. *See United States v. Bourquin*, 966 F.3d 428, 432 (6th Cir. 2020) ("[T]he government bears the burden of proving that an enhancement applies by a preponderance of the evidence."). And a party who fails to make an argument to meet its burden can waive any argument to that effect. Thus, *McFalls* does not control.

In sum, I return to the framework I discern from our caselaw. First, a general remand for resentencing "wipes the slate clean," *McFalls*, 675 F.3d at 606, only for issues preserved by the parties. On such a remand, a party may re-assert issues that were raised in prior proceedings, regardless of any earlier determination on those issues. A party may assert an issue or argument for the first time on remand only if it was unavailable or logically irrelevant in the first proceeding.

Here, the government did not request the physical restraint enhancement at Pembrook's and Johnson's original sentencing, and it did not challenge its omission during the first appeal. There have been no intervening legal or factual changes since the original sentencing, and the

---

**2**The majority's position seems to be that waiver would apply only if the government was raising the issue in this appeal, but that would mean that only parties that lose in the district court could ever waive arguments. For example, if the district court in this case had declined to apply the physical restraint enhancement, it seems that the majority would hold that the government could not appeal that decision based on waiver. But that position is untenable. Instead, our precedent and the doctrine of waiver confirm that a party that waives an issue by failing to raise it in the initial appeal, as the government did here, has waived that issue going forward.

enhancement was therefore available at the original sentencing, *McKinley*, 227 F.3d at 718.  Our waiver rule applies.

V.

I would hold that the government waived the enhancement.  I respectfully dissent.